03-23239

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIV-LENARD

IN ADMIRALTY

PETER ALVAREZ,

Plaintiff,

vs.

CARNIVAL CORPORATION,

Defendant.
_______________________________/

CASE NO. MAGISTRATE JUDGE SIMONTON

FILED BY D.C.
03 DEC -8 PM 12:57
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FL - MIAMI

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendant and alleges:

**I. PRELIMINARY ALLEGATIONS**

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears. Plaintiff is filing this complaint in federal court as required by the express terms of Defendant's passenger ticket federal forum selection clause.

2. Defendant, at all times material hereto, personally or through an agent;

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b. Were engaged in substantial activity within this state;

c. Operated vessels in the waters of this state;

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.



f. The defendant, as a common carrier was engaged in the business of providing to the public and to the plaintiff in particular, for compensation, vacation cruises aboard the vessel, Sensation.

3. Defendant is subject to the jurisdiction of the Courts of this state.

4. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

5. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel Triumph.

6. On or about March 12, 2003, Plaintiff was a paying passenger on defendant's vessel which was in navigable waters. A copy of Plaintiff's passenger ticket is attached.

**II. COUNT I - NEGLIGENCE**

7. Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 6 as though alleged originally herein.

8. It was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

9. On or about March 12, 2003, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

10. Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

A.   Failure to keep stairs free of debris and/or equipment; and/or

B.   Failure to warn Plaintiff of debris and/or equipment left on stairs; and/or

C.   Allowing Plaintiff and other passengers to carry take out food; and/or

D.   Failing to warn Plaintiff and other passengers of dangers of carrying take out food on ship; and/or

E.   Placing debris and/or equipment on stairs; and/or

F.   Not providing enough crew to hold photographers equipment while photographer was taking photographs; and/or

G.   Failing to proper and adequate training to crew members as to where to place their equipment; and/or

H.   Failing to provide prompt, proper, or adequate medical treatment;

All of which caused the Plaintiff to trip and fall on a bag of equipment left by a crew member on the stairs aboard Defendant's vessel.

11. At all material times, Defendant had exclusive custody and control of the vessel, Triumph..

12. Defendant knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

13. As a result of the negligence of Defendant, the Plaintiff was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, plaintiff lost the benefit of his vacation, cruise, and transportation costs.

Wherefore, the plaintiff demands judgment for all damages recoverable under the law against the defendant.

LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
Suite 2480, One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 373-3016

By____________________
JASON R. MARGULIES
FLORIDA BAR NO. 057916

# Carnival®

## 7 Day Western Caribbean Itinerary

| DAY | PORT | ARRIVE | DEPART |
|---|---|---|---|
| SAT | MIAMI | | 4:00 PM |
| SUN | FUN DAY AT SEA | | |
| MON | COZUMEL | 7:00 AM | Midnight |
| TUE | FUN DAY AT SEA | | |
| WED | GRAND CAYMAN | 7:30 AM | 4:30 PM |
| THU | OCHO RIOS | 8:00 AM | 3:30 PM |
| FRI | FUN DAY AT SEA | | |
| SAT | MIAMI | 8:00 AM | |

001

IUARKL

# WELCOME ABOARD "the Fun Ships"

**IMPORTANT NOTICE TO GUESTS**

**THE GUEST TICKET CONTRACT IN THIS BOOKLET CONTAINS CONDITIONS ON NUMBERED PAGES 1 THROUGH 11 IN THE REAR PORTION OF THIS BOOKLET. YOUR ATTENTION IS DIRECTED TO THESE CONDITIONS, CERTAIN OF WHICH CONTAIN IMPORTANT LIMITATIONS ON RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST THE CRUISE LINE, VESSEL OR THEIR AGENTS OR EMPLOYEES. PLEASE READ THE CONTRACT AND THESE TERMS AND RETAIN THE CONTRACT FOR FUTURE REFERENCE.**





Carnival®

## IMPORTANT! PLEASE READ CAREFULLY

For debarkation and [illegible] emergency purposes, Carnival needs to have your return travel information. The next coupon should be completed prior to your arrival and will be collected at time of check-in .

**Guests that are flying back home after the cruise, please complete the "Return Airline Ticket Information" coupon.**
If you need assistance in completing the information, please use the sample airline ticket on the reverse side, along with your actual airline ticket. The shaded area on the sample ticket identifies where the information is located on your tickets.

**Guests with ground transportation and hotel reservations, please complete the "Return Transportation & Hotel Information" coupon.**
Please provide us with detailed information about your immediate plans following the cruise.

**Carnival.**

limited or delayed. Guest acknowledges that all or part of their voyage may be in areas where medical care and evacuation may not be available. Guest agrees to indemnify and reimburse Carnival in the event Carnival elects to advance the cost of emergency medical care, including medical care provided ashore as well as transportation and/or lodging in connection therewith.

(b) Carnival's vessels visit numerous ports in a number of countries. Guests assume responsibility for their own safety and Carnival cannot guarantee Guest's safety at any time. The United States Department of State, Centers for Disease Control and Prevention and other governmental and tourist organizations regularly issue advisories and warnings to travelers and Carnival strongly recommends Guests obtain and consider such information when making travel decisions. Carnival assumes no responsibility for gathering said information. The Guest acknowledges that the cruise may be booked in a location that is susceptible to severe weather systems, including but not limited to, hurricanes, tropical storms and depressions, and that Carnival reserves the right to alter the ship's course, ports of call, itinerary, activity and shore excursions to avoid such weather systems and insure the comfort and safety of the Guest and crew.

(c) Proper travel documentation is required at embarkation and throughout the cruise. Any guest traveling without proper documentation will not be allowed to board the vessel and no refund of the cruise fare will be issued. United States citizens must produce proof of citizenship in the form of a passport (valid or expired for less than 10 years), original birth certificate, state-issued certified copy of birth certificate, U.S. Military ID, or original Naturalization papers. Canadian citizens must produce a valid passport, original birth certificate or certified copy of a birth certificate. U.S. Resident Aliens need an Alien Resident Card. Non-U.S. citizens need a valid passport and a valid, unexpired U.S. Multiple Re-Entry Visa if applicable. Aliens eligible to apply for admission under the Visa Waiver Pilot Program must have a valid, unexpired passport. Carnival assumes no responsibility for advising Guest of Immigration requirements. Resident Aliens and Aliens must contact the appropriate consulate, U.S. Embassy and U.S. Immigration office to inquire about necessary travel documentation. Canada requires certain foreign nationals to obtain a Canadian visa in addition to the multiple-entry visa. All guests 16 years of age or older must provide an official photo I.D.

(d) Guest acknowledges receipt of Carnival's applicable brochure and "Welcome Aboard" booklet. Guest agrees to abide by the terms and conditions of Carnival's brochure and "Welcome Aboard" booklet.

(e) Guest acknowledges that, for a voyage commencing in a United States port for a round-trip voyage via one or more United States ports, Guest must complete the voyage and disembark at the embarkation port. Failure to do so may result in a fine or penalty being imposed by the United States Customs Service or other governmental agency. In consideration for the fare paid, Guest agrees to pay any such fine or penalty imposed because of Guest's failure to complete the voyage.

Carnival®

(f) Carnival shall refuse boarding to any Guest under the age of twenty-one unless: (1) the Guest is traveling in the same stateroom with an individual twenty-five years or older; (2) traveling in the same stateroom with their spouse; or (3) traveling with a parent or guardian in an accompanying stateroom. Proof of age and/or proof of marriage are required. Carnival shall not be liable to make any refunds or for any damages with respect to any Guest's failure to provide proper proof of age or marriage or otherwise comply with this provision.

3. Any travel agent or sales agent utilized by the Guest in connection with this contract is solely the agent of the Guest and not Carnival. Carnival is not responsible for the financial condition or integrity of any travel agent utilized by Guest. In the event that an agent shall fail to remit to Carnival any monies paid to the agent by Guest, Guest shall be and remain liable for the fare due to Carnival, regardless of whether liability is asserted before or after embarkation. Issuance and validity of ticket contract is conditional upon final payment being received by Carnival prior to sailing. Any refund made by Carnival to an agent on behalf of Guest shall be deemed payment to Guest, regardless whether the monies are delivered by the agent to Guest. Receipt of this ticket contract, any other documentation or notification pertaining to the cruise by Guest's travel agent shall constitute receipt by Guest.

4. (a) Each fully paid adult Guest will be allowed an unlimited amount of baggage free of charge. Baggage means only trunks, valises, satchels, bags, hangers and bundles with their contents consisting of only such wearing apparel, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the journey.

(b) No tools of trade, household goods, presents and/or property of others, jewelry, money, cameras, documents, valuables of any description including but not limited to such articles as are described in Section 4281 Revised Statute of the U.S.A. (46 USC § 181) shall be carried except under and subject to the terms of a special written contract or Bill of Lading entered into with Carnival prior to embarkation upon application of the Guest. The Guest warrants that no such articles are contained in any receptacle or container presented by him as baggage hereunder, and if any such articles are shipped in the Guest's baggage in breach of this warranty, no liability for negligence, gross or ordinary, shall attach to Carnival for any loss or damage thereto.

(c) Carnival shall not be liable for: (1) Guest's failure to comply with the requirements set forth in Clauses 4(a) and 4(b); (2) any loss or damage before baggage comes into Carnival's actual custody on board or after baggage leaves Carnival's actual custody on board, including, but not limited to, loss or damage by airlines or other transportation services; (3) any loss or damage of baggage while not in the actual possession, custody and control of Carnival; (4) damage due to wear, tear or normal usage; (5) any loss or damage of perishable items, medicine, liquor, cash, securities or other financial instruments, or (6) any loss or damage while in the custody and control of stevedores.

0308
225
OF 19
4312
/25/03
:28:04
59Z78

**Carnival.**

(d) It is stipulated and agreed that the aggregate value of Guest's property, does not exceed $50 per guest or bag with a maximum value of $100 per stateroom regardless of the number of occupants or bags and any liability of Carnival for any cause whatsoever with respect to said property shall not exceed such sum, unless the Guest shall in writing, delivered to Carnival, prior to embarkation, declare the true value thereof and pay to Carnival prior to embarkation a sum equal to 5% of the excess of such value. If Carnival shall be held liable for the loss of or damage to Guest's baggage or property it is agreed that such liability shall not exceed the lesser of: (1) the actual cash value, or (2) value declared in the manner above provided (up to U.S. $100 if no such declaration has been made). Declared value amounts to be proportionately reduced in any case where less than all of Guest's baggage or property is lost, delayed or rendered unusable due to damage. In no event shall Carnival be liable to pay any compensation if the nature or value of the property has been misrepresented.

(e) No Guest is permitted to bring on board the Vessel live animals (other than qualified service animals, with not less than 14 days advance notice given to Carnival) Weapons, Firearms, Ammunition, Explosives or other dangerous goods without written permission from Carnival. Guest will be solely responsible for any and all damage and/or loss caused by service animals.

5. Carnival has the right without previous notice to cancel this contract at the port of embarkation or any time during the voyage and shall thereupon return to the Guest, if the Contract is completely canceled, his passage money, or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, Carnival shall have no further liability for damages or compensation of any kind.

6. (a) The Guest warrants that he and those traveling with him are physically fit to travel at the time of embarkation and is required to notify Carnival in writing at the time of booking the cruise of any physical disability or medical condition which may require special assistance during the voyage. Failure to do so will release Carnival from any liability for loss, damages or other compensation arising from or related in any way to such disability or condition. Upon booking the cruise, guests who have special needs are required to contact Carnival's Special Needs Desk (305-5[illegible]-2600 ext. 70025) to discuss the details of their special needs. Carnival reserves the right to require that any Guest, who is not self-sufficient, travel with a companion who shall take responsibility for any assistance needed during the voyage and in case of emergency.

(b) Carnival and the Master each reserves the right to refuse passage, disembark or confine to a stateroom any Guest whose physical or mental condition or behavior would be considered in the sole opinion of the Captain and/or the ship's physician to constitute a risk to the Guest's own well-being or that of any other guest or crew member. Passengers who will enter their third trimester (twenty-seventh week) of pregnancy by the time of the voyage and infants less than four months old shall not be permitted to board the vessel. Carnival and the Master reserve the right to disembark any guest whose behavior affects the comfort, enjoyment or safety or well being of other guests or of any crew.



0308
225
OF 19
4313
/25/03
:28:04
59Z78

(c) Guest acknowledges that Carnival's vessels contain non-smoking sections. Guest agrees to refrain from smoking in those sections and agrees that Carnival has the right to disembark the Guest for failure to observe Carnival's non-smoking policy.

(d) Guests are prohibited from bringing alcoholic beverages on Carnival's vessels for on board consumption. Alcoholic beverages purchased in the vessel's gift shops or ashore cannot be consumed aboard the vessel and will be retained by Carnival until the end of the voyage. Guests who are celebrating a special occasion are permitted to bring fine wine or champagne (no other alcohol is permitted) at the beginning of the cruise during embarkation day only. A $10 corkage fee will be charged should guests wish to consume this wine/champagne in the dining room. Carnival reserves the right to refuse to serve alcohol to any passenger. Guest acknowledges that the minimum age permitted for the purchase, possession or consumption of alcoholic beverages aboard Carnival's vessels is twenty-one (21). Guest agrees to supervise all persons under age twenty-one (21) under Guest's charge to insure that they do not violate this, or any other, shipboard regulation. Guests who attempt to purchase alcohol by using false identification or the Sail & Sign card of a Guest who is twenty-one or older will be deemed in violation of this policy. Any Guest twenty-one or older who attempts to or purchases alcohol for any guest under twenty-one will also be deemed in violation of this policy. Guest agrees that Carnival has the right to d[isemb]ark any guest who violates this policy and as well as any adults traveling wi[th] mino[r]s who violate this policy or any other shipboard regulation.

7. Carnival reserves the right to increase published fares wi[th]out p[r]ior notice. In the event of an increase, the Guest has the option of accept[ing] the [in]creased fare or canceling reservations without penalty. Carnival reserve[s] the right to use any substitute ship in the performance of this contract.

8. Reservations will be held until 30 minutes prior to depar[tur]e. No refunds will be made in the event of "no shows", unused tickets, lost ticket[s,] inter[r]uptions, partially used tickets, or cancellations received late or after the sta[rt o]f the cruise. A cancellation occurs when a stateroom is released and not simu[lta]neo[u]sly rebooked on the same sailing. Carnival strongly recommends the purc[ha]se o[f] trip cancellation insurance from your travel agent. Cancellation charges fo[r i]ndividual bookings will be assessed as listed below. For cancellation charges re[lat]ed to group bookings, partial ship charters or full ship charters refer to your ch[ar]ter contract or group booking agreement for terms and conditions.

**Carnival.**

| | DAYS PRIOR TO DEPARTURE DATE | CANCELLATION CHARGE (per guest) |
|---|---|---|
| 2 & 3 DAY CRUISES-TO NOWHERE | Up to 61 days | $50 (non-refundable) |
| | 60 to 30 days | 25% of Total Fare* |
| | 29 to 8 days | 50% of Total Fare* |
| | 7 days or less | No Refund |
| 3, 4 & 5 DAY CRUISES | Up to 61 days | None |
| | 60 to 30 days | Deposit |
| | 29 to 8 days | 50% of Total Fare* |
| | 7 days or less | No Refund |
| 6, 7 & 8 DAY CRUISES | Up to 71 days | None |
| | 70 to 30 days | Deposit |
| | 29 to 8 days | 50% of Total Fare* |
| | 7 days or less | No Refund |
| ALASKA CRUISES CRUISE TOURS AND 10 DAY OR LONGER CRUISES | Up to 76 days | None |
| | 75 to 46 days | Depos[illegible] |
| | 45 to 15 days | 50% o[illegible] [illegible]tal [illegible]are* |
| | 14 days or less | No Ref[illegible]d |

* Total Fare= Cruise Fare, Air Fare Supplement, Transfer Services [illegible]d Pre-Post Packages (if applicable)

9. (a) The Vessel shall be entitled to leave and enter ports with or withou[illegible] pilots or tugs, to tow and assist other vessels in any circumstances, to return to or e[illegible]er any port at the Master's discretion and for any purpose and to deviate in any dire[illegible]ion or for any purpose from the direct or usual course, and to omit or change any [illegible]ll port calls, arrival or departure times, with or without notice, for any reason what[illegible]ever including but not limited to safety, security, adverse weather, strikes, tides, h[illegible]tilities, emergency debarkations of Guests or crew, or late air, sea, car or motor co[illegible]h departures or arrivals, all such deviations being considered as forming part of and [illegible]ncluded in the proposed voyage. Carnival shall have no liability for any compensatio[illegible] [illegible] other damages in such circumstances.

10. (a) Guest agrees during the course of the voyage to follow the directio[illegible] [illegible]f the ship's Master, or his authorized officer. Guest further agrees not to solicit [illegible]yone on the

Carnival.

vessel for any commercial or professional purposes. Guest agrees that any violation of this paragraph may subject guest to disembarkation.

(b) Guest agrees, in all ports of call, to return to the Vessel not less than 30 minutes before the scheduled departure time. Guest further acknowledges that shipboard and shore side clocks may have different times, but it is Guest's responsibility to return to the vessel so as not to miss vessel's departure. Any costs associated with transporting Guest to rejoin the vessel including, but not limited to, governmental fees, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees shall be for the account of Guest.

(c) Carnival has a "zero tolerance" policy towards reports of any illegal activity or behavior by passengers or crew aboard its vessels. Guest agrees to comply with this policy and further acknowledges that Carnival will report any and all alleged instances of illegal activity or behavior to the appropriate law enforcement authorities.

11. The Guest shall be liable to and shall reimburse Carnival or the Master for any fines or penalties imposed on Carnival by any government, governmental agency or official, port or port official, for Guest's failure to observe or comply with local requirements in respect of immigration, border patrol, customs and excise, agriculture, health or any other government regulation whatsoever.

12. The Guest or Guest's estate shall be liable to and shall r imburse Carnival for all deviation expenses (including loss of revenue), damages o the Vessel, its furnishings, operations or equipment, or any property of Carniv caused directly or indirectly, in whole or in part, by any misconduct, willful or ne ligent act or omission on the part of the Guest or any minors traveling with Guest. T Guest or Guest's estate shall defend and indemnify Carnival and the Vessel, t ir servants and agents against liability which Carnival or the Vessel or such serv nts or agents may incur towards any person, company or Government for any d mage to property, personal injury or death caused directly or indirectly, in whole r in part, by any misconduct, willful or negligent act or omission on the part of the uest or minors traveling with Guest.

13. (a) Guest acknowledges that all Shore excursions/tours (v hether conducted in the water, on land or by air), airline flights and ground trans ortation, as well as the ship's physician, nurse and on board concessions (includi g but not limited to, the gift shops, spa, beauty salon, fitness center, golf and art p ograms, video/snorkel concession) are either operated by or are independent co tractors. Carnival neither supervises nor controls their actions, nor makes a representation either express or implied as to their suitability. Carnival, in ar anging for the services called for by the physician or nurse, all on board concessi s, all shore excursion/

10308 225 OF 19 4314 /25/03 :28:04 59Z78



**Carnival®**

tour tickets, all pre and post cruise airline flights or other transportation off of the ship and its tenders, does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services. Guests use the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(b) Guest acknowledges that the ship's masseuse, barber, hairdresser, manicurist, fitness or golf instructor, videographer, art auctioneer, gift shop personnel, wedding planners or other providers of personal services are employees of independent contractors and Carnival is not responsible for their actions. Guest further acknowledges that although independent contractors or their employees may use signage or clothing which contain the name "Carnival" or other related trade names or logos, the independent contractor status remains unchanged. Independent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival.

14.(a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(b) Carnival shall not be liable for any claims whatsoever, other than for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 30 days after the Guest is landed from the Vessel or in the case the Voyage is abandoned, within 30 days thereafter. Suit to recover on any claim whatsoever other than for personal injury, illness or death shall not be maintainable unless filed within six months after the date Guest is landed from the Vessel or in the case the Voyage is abandoned, within six months thereafter and unless served upon Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitation periods for claims which include but are not limited to, allegations concerning any and all civil rights, the ADA, trade practices and/or advertising.

(c) In consideration for the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any persons not employed by Carnival nor for any intentional or negligent acts of Carnival's employees committed while off duty or outside the course and scope of their employment.



# Carnival®

(d) In consideration for the fare paid, it is agreed that Carnival shall have no liability as a consequence of guest's use of ship's athletic or recreational equipment or as a consequence of guest's decision to participate in any athletic or recreational activity or event.

15. It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

16. To the maximum extent allowed by law, Carnival shall be entitled to any and all liability limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as well as the 1976 Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea ("Athens Convention"), which limits Carnival's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein, and all other limits for damage or loss to personal property.

17. (a) Carnival shall not be liable to the passenger for [illegible]mages for emotional distress, mental suffering/anguish or psychological injury of a[illegible] kind under any circumstances, except when such damages were caused by the [illegible]egligence of Carnival and resulted from the same passenger sustaining actual [illegible]hysical injury, or having been at risk of actual physical injury, or when such dama[illegible]es are held to be intentionally inflicted by Carnival.

(b) In addition to all the restrictions and exemptio[illegible] from [illegible]ability provided in this Contract, Carnival shall have the benefit of all Statut[illegible] of the United States of America providing for limitation and exoneration from liabi[illegible]ly and the procedures provide thereby, including but not limited to Sections 4282[illegible]282A, 4283, 4284, 4285 and 4286 of the Revised Statutes of the United States of A[illegible]erica (46 USCA Sections 182, 183, 183c (b), 183b, 184, 185 and 186); as well a[illegible]ll restrictions or exemptions from liability, when applicable, under the laws of an[illegible]oreign nation. Nothing in this Contract is intended to nor shall it operate to limit [illegible] deprive Carnival or any such statutory limitation of or exoneration from liability [illegible]ler any applicable laws.

18. If the performance of the proposed voyage is hi[illegible]ered or prevented (or in the opinion of Carnival or the Master is likely to be h[illegible]dered or prevented) by war, hostilities, blockage, ice, labor conflicts, strikes [illegible] board or ashore, restraint of Princes, Rulers or People, seizure under legal pro[illegible]ss, breakdown of the Vessel,



congestion, docking difficulties or any other cause whatsoever or if Carnival or the Master considers that for any reason whatsoever, proceeding to, attempting to enter, or entering or remaining at the port of Guest's destination may expose the Vessel to risk or loss or damage or be likely to delay her, the Guest and his baggage may be landed at the port of embarkation or at any port or place at which the Vessel may call, at which time the responsibility of Carnival shall cease and this contract shall be deemed to have been fully performed, or if the Guest has not embarked, Carnival may cancel the proposed voyage without liability to refund passage money or fares paid in advance.

19. Carnival and the Master shall have liberty to comply with any orders, recommendations or directions whatsoever given by the Government or Department of any nation or by any person acting or purporting to act with the authority of such Government or Department or by any Committee or person having under the terms of the War Risks Insurance on the Vessel the right to give such orders, recommendations or directions, and if by reason of, and in compliance with any such orders, recommendations or directions anything is done or is not done the same shall not be deemed a deviation or a breach of this contract. Disembarkation of any Guest or discharge of baggage in accordance with such orders, recommendations or directions shall constitute due and proper fulfillment of the obligation of Carnival under this Contract.

20. Carnival and the Vessel shall have a lien upon all baggage, money and other property whatsoever accompanying the Guest and the right to sell the same by public auction or otherwise for all sums whatsoever due from the Guest under this contract and for the costs and expenses of enforcing such lien and such sale.

21. Carnival and/or its promotional partners have the exclusive right to include photographic, video and other visual portrayals of Guest in any medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to Guest, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carnival's sole property, free from any claims by Guest or any person deriving any rights or interest from Guest.

22. This contract constitutes the entire agreement between Carnival and Guest and supercedes all other agreements, oral or written. Any alteration to any term of this contract must be in writing and signed by Carnival. Should any provision of this contract be contrary to or invalid by virtue of the law of the jurisdiction in which this contract is sought to be enforced or be so held by a court of competent jurisdiction, such provision(s) shall be deemed to be severed from the Contract and of no effect and all remaining provisions herein shall be in full force and effect and constitute the Contract of Carriage.





**Carnival.**

23. Guest hereby expressly agrees that he/she will not utilize any tape recording, video, or photograph(s) of himself/herself, any other guest, crew, or third party on board the vessel, or depicting the vessel, its design, equipment, or any part thereof whatsoever, for any commercial purpose or in any media broadcast, or for any other non-private use, without the express written consent of Carnival. Guest acknowledges that by boarding the vessel, at any time, Guest irrevocably agrees to this provision, which is a condition precedent to being permitted on board the vessel and can be enforced by any legal means, including, but not limited to, injunctive relief.

24. If guest is denied boarding, confined to a stateroom or disembarked from the vessel pursuant to any provision of this contract, including but not limited to paragraphs 2(c), 2(f), 6(b), 6(c), 6(d), 10(a), guest agrees:

a. Carnival will not be liable for any refund of Cruise Fare, other compensation or any damages

b. All rights under Carnival's Vacation Guarantee are forfeited. This forfeiture also applies to any guest who disembarks because another guest is disembarked.

c. Disembarkation and repatriation to the embarkation port or any other destination will be at guest's sole expense.

d. To indemnify Carnival and that Carnival may charge Guest's on-board charge account for any and all expenses incurred by Carnival in relation to Guest's disembarkation and/or repatriation.

25. Guest agrees if Carnival incurs any expense or sustains any damage as delineated but not limited to paragraphs 2(a), 2(e), 10(b), 11, 12 that Carnival may charge Guest's on-board charge account for any expense incurred or damage sustained.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

PETER ALVAREZ, CASE NO.

Plaintiff,

vs.

CARNIVAL CORPORATION,

Defendant.
______________________________/

**PLAINTIFF'S NOTICE OF PROPOUNDING INITIAL INTERROGATORIES**

Plaintiff, PETER ALVAREZ, by and through undersigned counsel hereby propounds Plaintiff's Initial Interrogatories to Defendant to be responded to in accordance with the applicable Federal Rules of Civil Procedure.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing and attached were served on the Defendant with the Complaint in this matter.

LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
Suite 2480, One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 373-3016

By______________________________
JASON R. MARGULIES
FLORIDA BAR NO. 057916

INSTRUCTIONS

(1) The incident referred to in these interrogatories is the
one alleged by Plaintiff to be the basis of his claim in the
Complaint.

(2) These interrogatories are requesting the information of
the Defendant, Defendant's agents, servants, employees,
investigators, attorneys and insurance carriers.

INTERROGATORIES

1. State separately the names, addresses, employers and
telephone numbers of any and all persons known to you or to
anyone acting on your behalf who saw, heard or investigated
or claims to have seen or heard any of the events or
happenings that occurred immediately before, at the time of,
or immediately after the incident.

A.

2. As to all persons whose names are set forth in the
answer to the preceding interrogatory and the Plaintiff, have
you, your agents, investigators or attorneys, or anyone
acting on your behalf obtained statements of any kind,
whether written, recorded, stenographically transcribed, oral
or otherwise, from them?

A.

3. If you answer to the preceding interrogatory is in
the affirmative, please describe each statement and include
the name, job title, employer, telephone number, and present
address of each person; the type of statement which was taken
(whether written, recorded, transcribed); the name of the

present custodian of each statement so taken; and the date on which the statement was taken.

     A.

    4. Do you, your attorneys or investigators or anyone acting on your behalf have any maps, charts, diagrams, or photographs or movies of this incident or physical or mechanical objects or of persons involved in the incident.

     A.

    5. If your answer to Interrogatory #4 is in the affirmative, describe each and include a description, the date made, the name, job title, employer and present address of the person(s) who made each map, chart or diagram, or took each photograph or movie and the general subject matter of each.

     A.

    6. (a) Identify each person whom you or your attorneys expect to call as an expert witness at trial, providing his/her name, address and telephone number, and state the subject matter on which each person identified is expected to

testify, and state the substance of the facts and opinions to which each expert is expected to testify, state a summary of the grounds for each opinion and state the educational background, training, experience of each person which qualified him/her as an expert, and identify the field of expertise.

A.

(b) Identify every other person from whom you or your attorneys have received or obtained an expert opinion relating to the issues in this case, (as contemplated by Florida Rule of Civil Procedure 1.280 (b)(4)(B).)providing his/her name, address and telephone number, and state whether the opinion was oral, written, recorded or a combination of these; the date the opinion was obtained, and the name and address of the person to whom it was made or given.

A.

7. On the date of this incident, was there in effect any policy of insurance or indemnity by or through which you were <u>or may be insured</u>, indemnified, or covered in any manner, or to any extent for any claim in this action? If so, state separately for <u>each</u>: the name and address of the issuing company; the name, type and identifying number of each policy; the name and address of each insured; the limits of liability of each policy; the name, address and employer of the present custodian of each policy.

A.

8. On the date of this incident, was there in effect one or more policies of insurance or indemnity under which any question or controversy exists as to coverage? If so, state for each: the type and number of the policies on which there were any questions; the names of the insurance companies involved; the names of the insured involved; the nature of the controversy.

A.

9. Do you know of any claim for personal injuries made by Plaintiff prior to this suit, whether formal or informal, and if so, state for each the full particulars, including date, nature of injuries claimed and final disposition of the claim.

A.

10. Identify each and every report or statement made by you regarding the facts of this incident or events leading up to it. As to each include: its date; the type of the report, or statement, whether written, oral, recorded, reported or otherwise; to whom it was made: the name, address and employer of the custodian of any permanent form of each statement.

A.

11. Please state the names and addresses or information sufficient for the location of all persons known or reasonably believed by Defendant to have been eye witnesses to the incident.or to have personal knowledge of any facts relevant to this incident.

A.

12. Please state whether Defendant or anyone else to Defendant's knowledge claims to have heard the Plaintiff or anyone purporting to have personal knowledge of the facts having made an oral statement (excluding depositions, if any, in this cause) concerning any facts pertaining to the happening of this incident or the extent of Plaintiff's damages. If so, state, by whom was such oral statement made; when it was made; to whom was it made; and what was reportedly said.

A.

13. State the full name and present address of each owner, operator, and bare boat charterer of the vessel, with respect to the incident alleged in the complaint.

A.

14. If you assert any defense based on the conduct of the plaintiff, please state: what acts or omissions are the basis thereof; the name and address and place of employment, job title or capacity, and present whereabouts of each person having knowledge or claiming to have knowledge of such conduct on the part of the plaintiff; and what acts known by Defendant are the basis for mitigation of Plaintiff's damages.

A.

15. State in detail the manner in which you assert that the incident referred to in the complaint occurred.

A.

16. State the complete name, last known address, and telephone number of the ship's nurse and/or doctor's assistant on the vessel for each time Plaintiff was examined or treated on the vessel.

A.

17. Please state whether or not an accident or incident report was prepared on board the vessel pertaining to Plaintiff's accident, incident or injury; and if so please state the date the report was prepared, the name, present address, employer and job title of the person responsible for its preparation; the name, job title, employer, and present address from each person from whom an on board statement was taken along with the date of same. Also state the name and address of each person having received a copy and presently having a copy in their possession.

A.

18. Please state whether or not photographs were taken of the scene of Plaintiff's alleged accident or incident and; if so, please state for each photo the date the photo's were taken, the name, job title, employer, and present address of the photographer, along with the name and address of each person presently having a copy of each photo.

A.

19. Please state whether the scene of Plaintiff's alleged accident or incident has changed in any way from the time plaintiff claims he was injured and; if so, please describe the changes along with the name, job title, employer, and current address of each person that has knowledge of the change(s).

A.

20. Are there any bills that you have received pertaining to plaintiff with respect to the incident alleged in the complaint for medical care or transportation; and if so please identify each bill by date, name of person or organization sending the bill, amount of bill and amount of bill paid by you, along with an explanation with respect to any bills unpaid or not paid in full.

A.

21. Did defendant provide or arrange for any medical assistance or care to be given to Plaintiff?  If so, state for each and every such act of medical assistance or care, the date and time said care or assistance was given, specifically what assistance or care was give to plaintiff, and the name, address, phone number, employer, employers phone number of each and every person providing the medical assistance or care to plaintiff.

A.

22. With respect to each document, statement, photograph, video or other material for which work product privilege and/or attorney client privilege has or will be claimed in response to plaintiff's interrogatories or request for production sent with the complaint, please describe each item A) by date, the name, employer, job title and address of the person that created or obtained the item; B) the name,

employer, job title, and address of each present custodian;
C) the name, employer, job title and address of each person
that has received a copy of the item; D) along with a
description of the item.


A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

PETER ALVAREZ, CASE NO.

Plaintiff,

vs.

CARNIVAL CORPORATION,

Defendant.
_______________________________/

**PLAINTIFF'S NOTICE OF PROPOUNDING INITIAL REQUEST FOR PRODUCTION**

Plaintiff, PETER ALVAREZ, by and through undersigned counsel hereby propounds Plaintiff's Initial Request for Production to Defendant to be responded to in accordance with the applicable Federal Rules of Civil Procedure.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing and attached were served on the Defendant with the Complaint in this matter.

LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
Suite 2480, One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 373-3016

By___________________________
JASON R. MARGULIES
FLORIDA BAR NO. 057916

**REQUEST FOR PRODUCTION**

Plaintiff hereby requests each Defendant to produce the following documents at the law office of Plaintiff's attorney:

PRIVILEGED ITEMS

With respect to any documents or items for which work product and/or attorney client privilege is claimed, please provide a list of items denoting date of preparation, type of item and the name ,address, job title and employer for the person preparing the item and for each present custodian of same. Also submit the items in a sealed envelope to the Court for an in camera inspection.

1. Any and all medical records referring to the Plaintiff in Defendant's possession, custody or control.

2. Any and all contracts between the Defendant and the Plaintiff.

3. Any and all written correspondence between the Defendant and the Plaintiff.

4. Any and all ship's log entries which refer to either the Plaintiff, the subject incident(s), or the subject area of incident, (including but not limited to the deck log, engineering log, maintenance and repair log, radio-telephone log, purser's log, medical log and/or rough and smooth log) for the voyage during which Plaintiff's alleged incident occurred.

5. Any and all statements given by (or taken of) the Plaintiff in Defendant's possession, custody or control.

6. Policy of insurance or protection and indemnity providing coverage for Defendants by reason of Plaintiff's claim.

7. Photographs, diagrams, ship's engineering drawings, and graphs reflecting the area of plaintiff's alleged incident as it existed at the time alleged in the Complaint and before any changes to the scene of the incident occurred.

8. Proposed dates, locations, and times when Defendant will allow Plaintiff access to the subject area of the incident aboard the vessel to conduct an inspection, measuring, surveying and photographing.

9. Statements given by any witness or any other person who may have knowledge of relevant facts, with respect to the incident alleged in the Complaint, including those given at or near the time of the incident by defendant's employees and while the facts of the incident were still fresh in the memory of the

witness.

10. Reports rendered by any person who will be used as an expert witness in this action.

11. Work orders pertaining to the work being done at the time of the incident alleged in the Complaint at or near the subject area of the incident.

12. Photographs, slides, or motion pictures, or videotapes, including any possible surveillance of plaintiff taken at any time, which are in Defendants' possession or the possession of Defendants' agents, servants or employees.

13. In the event that the Defendant is not the owner and operator of the subject vessel, the charter agreement pertaining to the vessel at the time of the incident alleged in the complaint.

14. Department of Transportation, United States Coast Guard "Control Verification for Foreign Vessel" form in effect for the vessel stated in the Complaint for the date of the accident alleged in the Complaint.

15. Any and all documents that support each defendant's affirmative defenses.

16. Any and all documents, work order, log books, or any other document or computer entry pertaining to the inspection, repair and replacement of items or other maintenance work done in the area of the accident as alleged in the complaint for three years prior to the date of the incident to the present.

17. Copy of any and all statistics dealing with accidents or injuries similar to what is being claimed by plaintiff in this case.

18. Hotel Administration Quality Process Review Reports for, or which refer to, the area of the accident in question for three years prior to the date of the incident alleged in the complaint.

19. Any and all documents prepared in compliance with the International Safety Management Code, in effect at the time of the incident alleged in the complaint, with respect to the following: a. the index to all the sections and documents; b. those documents or sections pertaining to the type of incident alleged in the complaint.

20. Any and all of defendant's written policies and procedures which defendant contends were applicable in any manner to the alleged incident.

21. Safety and Environment Meeting notes, committee reports,

physicians reports and any other document produced with respect to any safety meetings which, in any way, refer to the subject area of the vessel referred to in Plaintiff's Complaint, from one year prior to the date of the incident alleged in the complaint to one year after the date of the incident alleged in the complaint.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

PETER ALVAREZ,

Plaintiff,

CASE NO.

vs.

CARNIVAL CORPORATION,

Defendant.
______________________________/

**PLAINTIFF'S NOTICE OF PROPOUNDING INITIAL REQUEST FOR ADMISSIONS**

Plaintiff, PETER ALVAREZ, by and through undersigned counsel hereby propounds Plaintiff's Initial Request for Admissions to Defendant to be responded to in accordance with the applicable Federal Rules of Civil Procedure.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing and attached were served on the Defendant with the Complaint in this matter.

LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
Suite 2480, One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 373-3016

By______________________________
JASON R. MARGULIES
FLORIDA BAR NO. 057916

**REQUEST FOR ADMISSIONS**

Plaintiff requests each defendant to admit the following:

1. The date of the incident alleged in the complaint is correct.

2. The place of the incident alleged in the complaint is correct.

3. The name of the defendant alleged to have owned the vessel involved in the incident alleged in the complaint is correct.

4. The name of the defendant alleged to have operated the vessel involved in the incident alleged in the complaint is correct.

5. The defendant charged with negligence with respect to the incident alleged in the complaint was, in fact, negligent at the time.

6. The plaintiff suffered personal injury as a result of the incident alleged in the complaint.

7. At the time of the incident alleged in the complaint, the plaintiff, was not, in any degree, negligent.

8. At all times material hereto, Defendant engaged in one or more of the acts listed in Florida Statutes 48.081 or 48.181 or 48.193 in Florida.

9. Defendant prepared an accident or incident report pertaining to the incident alleged in the complaint at or near the time of the alleged incident.

10. Defendant had photo's taken of the scene of the alleged incident on board the vessel at or near the time of the incident.

11. Defendant had photo's taken of the scene of the alleged incident on board the vessel prior to any changes being made to the scene.

12. All of the employees on the vessel at the time of Plaintiff's alleged incident were members of the vessel's crew.

13. Defendant has access to its crew members for purposes of taking statements and investigating incidents such as the one alleged by plaintiff in the complaint.

14. One of the duties of the Staff Captain on board the vessel is to investigate incidents and accidents.

15. One of the duties of the Staff Captain on board the vessel is to fill out an incident or accident report at or near the time of the incident or accident.

16. The Staff Captain keeps a copy of the incident or accident report.

17. Plaintiff was lawfully a passenger on board the vessel on the date of the accident alleged in the complaint.

18. Plaintiff had paid defendant the required transportation for transportation on the vessel on the date alleged in the complaint.

19. Defendant is liable for the negligence of its employees on board the vessel on the date alleged in the complaint.

(Rev 12/96)

# CIVIL COVER SHEET

03-23239

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV - LENARD

**I. (a) PLAINTIFFS**

PETER ALVAREZ

pa 03 C 23239 / Lenard / Simonton

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF CAPE CORAL, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

LIPCON, MARGULIES & ALSINA, P.A.
One Biscayne Tower, Suite 2480
2 South Biscayne Boulevard
Miami, Florida 33131
TEL: (305) 373-3016

**DEFENDANTS**

CARNIVAL CORPORATION

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT DADE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
SIMONTON

(d) CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

FILED BY ... D.C. / DEC ... / CLARENCE MADDOX / CLERK U.S. DIST. CT. / S.D. OF FLA. - MIA

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
B☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A REAL PROPERTY**
☐ 210 Land Condemnation
B☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☒ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
B☐ 510 Motions to Vacate Sentence
HABEAS CORPUS
B☐ 530 General
A☐ 535 Death Penalty
B☐ 540 Mandamus & Other
B☐ 550 Civil Rights
B☐ 555 Prison Condition

**FORFEITURE/PENALTY**
B☐ 610 Agriculture
B☐ 620 Other Food & Drug
B☐ 625 Drug Related Seizure of Property 21 USC 881
B☐ 630 Liquor Laws
B☐ 640 R.R. & Truck
B☐ 650 Airline Regs
B☐ 660 Occupational Safety/Health
B☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
A☐ 791 Empl. Ret. Inc. Security Act

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
A☐ 870 Taxes (U.S. Plaintiff or Defendant)
A☐ 871 IRS - Third Party 26 USC 7609

**A OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
B☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions
A OR B

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

NEGLIGENCE

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions) **IF ANY**

JUDGE ____ DOCKET NUMBER ____

DATE 11/24/03

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____

$150.00 893168
12/08/03